UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA ORBAN,

     Plaintiff,

v.                             CASE NO: 8:04-cv-1904-T-23MAP

CITY OF TAMPA,

     Defendant.

_____/

## ORDER

Barbara Orban sues the City of Tampa (the "City") for malicious prosecution in violation of civil rights enforceable under 42 U.S.C. § 1983 and for a violation of Orban's "right to due process of law guaranteed by the United States Constitution." Orban's claims result from a citation for careless driving and the consequent traffic court proceeding. Orban argues that because a City policy requires that (absent a supervisor's approval[1]) officers must issue a citation at each traffic accident, City police officers cited her without probable cause. Orban claims that the City's policy is unconstitutional and results in a malicious prosecution in violation of civil rights enforceable under Section 1983. Further, Orban asserts that the citation and

---

[1] Paragraph 23 of Orban's complaint alleges that, "If, after the investigation of a crash, an officer believes issuance of a citation is inappropriate, he or she must still obtain the authorization of a supervisor not to write a citation." In other words, the City employs no policy that requires issuance of a citation; the City employs a policy that requires consultation with a supervisor. Of course, this policy accords with the administrative reality that, in most automobile accidents, someone is at fault. Of the three options (the investigating officer decides every time, the supervisor decides every time, or the supervisor decides in the unusual case), the City's policy is the most reasonable policy, or, at the very least, not an unconstitutional policy.

subsequent prosecution violated her due process rights under the Fourteenth

Amendment.

A Section 1983 claim for malicious prosecution comprises both the violation of a

federal right and the common law tort of malicious prosecution, which in turn comprises

a prosecution (1) instituted or continued by the defendant; (2) furthered with malice and

without probable cause; (3) terminated in the plaintiff's favor; and (4) damaging to the

plaintiff.  See e.g. Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).  Orban alleges

as a predicate to her Section 1983 claims the violation of her Fourteenth Amendment

right to procedural due process.[2]

The parties submit cross-motions (Docs. 78, 79) for summary judgment on counts

two and three, which present the question whether probable cause existed for the

issuance of the citation.  In support of the motions, the parties provide deposition

testimony and affidavits.  If no dispute exists about the material facts, the court may

properly determine the existence of probable cause.  Martinez v. Brink's, Inc., No. 04-

14609, 2006 WL 551239 *3 (11th Cir. Mar. 8, 2006) (citing Endacott v. Int'l Hospital,

Inc., 910 So. 2d 915, 922 (Fla. 3d DCA 2005), and Beizer v. Judge, 743 So. 2d 134,

137 (Fla. 4th DCA 1999), and stating "probable cause is purely a matter of law for the

court where material facts are undisputed").  Further, the existence of probable cause

for the citation provides a complete defense to a claim of malicious prosecution.  See

---

[2] Orban's malicious prosecution claim that alleges an unreasonable seizure as a predicate
for the claim was dismissed with prejudice (Doc. 74).

e.g. Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003) (finding that the lack of

probable cause is a required element of a malicious prosecution claim).

Orban bears the "onerous burden" of demonstrating a lack of probable cause for

the prosecution of the civil traffic citation for careless driving.  Martinez v. Brink's, Inc.,

No. 04-14609, 2006 WL 551239 *3 (11th Cir. Mar. 08, 2006) (citing Burns v. GCC

Beverages, Inc., 502 So.2d 1217, 1219 (Fla. 1986)).  Orban must demonstrate that the

proceeding was initiated "without a reasonable ground of suspicion, supported by

circumstances sufficiently strong in themselves to warrant a cautious man in the belief

that the person accused is guilty of the offense with which he is charged."  Burns v.

GCC Beverages, Inc., 502 So.2d 1217, 1219 (Fla. 1986).  See also the authorities

collected in C. C. Marvel, Probable Cause or Want Thereof, in Malicious Prosecution

Action, as Question of Law for Court or of Fact for Jury, 87 A.L.R.2d 183 ("[T]he

standard of conduct for beginning or continuing any proceeding, whether civil or

criminal, is that of a reasonable or ordinarily prudent man placed in the same situation

as the defendant.").

Review of the parties' motions, the attached exhibits, and other matters of record

reveals that no party disputes the following facts:  While driving at fifteen miles per hour

in traffic and in the rain on a city street in Tampa, Florida, Orban failed to stop her

vehicle before colliding with the vehicle in front of her, the existence of which vehicle

became apparent to Orban only after an SUV, behind which she was traveling, abruptly

turned off the street (Orban's claim of the SUV's existence and her description of its

behavior is uncorroborated).  Her brakes, she claims, did not immediately engage

because the road was wet.  Orban telephoned the City police to report the accident, and

both drivers waited at the scene.  Visible damage on both cars evidenced a rear-end

collision.  Two City police officers arrived and investigated the scene of the accident,

interviewed both drivers (no other witness to the accident is known), and completed two

"accident forms."  The investigation lasted approximately forty-five minutes.  After the

investigation, the officers cited Orban for careless driving pursuant to Section 316.1925,

Florida Statutes, which states:

> Any person operating a vehicle upon the streets or highways
> within the state shall drive the same in a careful and prudent
> manner, having regard for the width, grade, curves, corners,
> traffic, and all other attendant circumstances, so as not to
> endanger the life, limb, or property of any person. Failure to drive
> in such manner shall constitute careless driving and a violation of
> this section.

Orban asserts that the officers either ignored or failed to credit her description of the

accident, although she claims that she provided the officers a satisfactory explanation

that the accident was unavoidable.  In addition, Orban provides the report of an "expert"

that states that "under [the] circumstances . . . this was an unavoidable accident" (of

course, the present case presents not the question whether the accident was

unavoidable according to the laborious and retrospective deductions of a scientist but

the question whether City police, unaided by a scientist, properly found probable cause

that the accident arose from carelessness).

However, Orban's on-the-scene observations aside, "so long as the totality of the

circumstances present a sufficient basis for believing that an offense has been

committed," an officer is not required to sift through conflicting evidence or to resolve

issues of credibility before concluding that probable cause exists.  Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002).  Further, probable cause "exists where the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  Brinegar v. United States, 338 U.S. 160, 175 (1949).

Orban argues that the officers' failure to credit her account of the accident demonstrates that the City employed both a policy of ignoring the statements of the cited driver and a policy of issuing a citation at each accident without conducting, or regardless of the results of, an investigation.  In support, Orban argues that no reasonable person hearing her description of the accident could conclude that she deserved a careless driving citation.  However, both officers testify that they relied on the Florida rebuttable presumption that the following driver in a rear-end collision is at fault.  Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 575 (Fla. 2001).  The officers assessed the scene and the damage to both cars, interviewed both drivers, and conducted a reasonable investigation of the accident before determining that Orban was probably at fault.  Clampitt describes the rationale for the presumption:

> In effect the law requires all drivers to push ahead of themselves
> an imaginary clear stopping distance or assured stopping space
> or adequate zone within which the driven vehicle can come to a
> stop. Failure to maintain such a zone is normally the sole
> proximate cause of injuries and damages resulting from the
> collision of a vehicle with an object ahead. This is why when a
> vehicle collides with an object ahead of it, including the rear of a
> leading vehicle, there is a presumption of negligence on the part
> of the overtaking or following vehicle.  Each driver must be

> prepared to stop suddenly (particularly during school and business hours on a roadway that is bordered by multiple business and residential establishments and a school, as in the present case).  It is logical to charge the rear driver with this responsibility because he or she is the person who is in control of the following distance.

786 So.2d at 575-576 (citations omitted).

Orban's rear-ending the car in front of the leading SUV provides sufficient evidence that Orban failed to "push ahead of [herself] an imaginary clear stopping distance."  (One supposes that a driver's rear-ending the car in front of the car in front of the driver creates an even stronger presumption of the driver's carelessness than the driver's rear-ending the car immediately in front of the driver.)  Clampitt, 786 So.2d at 575.  Although on reconsideration Orban successfully resisted the carelessness charge before a state judicial officer, police officers at the scene of an accident are neither permitted nor required to adjudicate the issue of fault (with an attendant risk of federal civil rights litigation in the event of a dispute) before issuing a traffic citation.  Brinegar v. United States, 338 U.S. 160, 175 (1949) ("These long-prevailing standards [of probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. . . .  The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests.").  As stated in Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003):

> An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.  See Lee, 284 F.3d at

- 6 -

> 1194-95; <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir.
> 1996); <u>Von Stein v. Brescher</u>, 904 F.2d 572, 578 (115h cir.
> 1990).  "For probable cause to exist, . . . an arrest must be
> objectively reasonable based on the totality of the
> circumstances."  (citation omitted)  "This standard is met when
> the facts and circumstances within the officer's knowledge, of
> which he or she has reasonably trustworthy information, would
> cause a prudent person to believe, under the circumstances
> shown, that the suspect has committed, is committing, or is
> about to commit an offense."  (citation omitted)  "Although
> probable cause requires more than suspicion, it does not require
> convincing proof, and need not reach the [same] standard of
> conclusiveness and probability as the facts necessary to support
> a conviction."  (citation omitted)

The undisputed facts provide a sufficient basis to determine as a matter of law

that the officers had probable cause to conclude Orban failed to drive in a careful and

prudent manner.  The officers arrived at the scene of the accident and discovered

evidence of a rear-end collision with the car in front of the car formerly in front of Orban.

The officers interviewed both drivers and concluded that Orban failed to stop her car

before the rear-end collision.  Viewed differently, the officers declined to definitively

resolve the Orban matter based on an uncorroborated narrative from Orban about the

unknown driver of an unidentified vehicle that allegedly failed to signal before abruptly

turning off the street and revealing a stopped vehicle, with which Orban crashed.

Finding probable cause, the officers issued Orban a citation for careless driving.

Orban succinctly states her argument in her motion for summary judgment

(Doc. 79, pg. 14):

> Rather, the car Dr. Orban hit was already stopped in the
> roadway which Dr. Orban could not know because the SUV,
> which had not slowed for the stopped car, blocked her view.
> Indeed, the SUV did not even brake for or signal its abrupt turn.

> The driving action of the SUV deprived Dr. Orban of both early awareness of the stopped car and concomitant reaction time and distance to stop.  Under these circumstances this was an unavoidable accident.

Orban apparently concludes that no reasonable person could find her careless for driving in a metropolitan area in the rain while following a leading vehicle so closely and quickly that, if the leading vehicle turns, Orban will collide into any stopped traffic further ahead.  In other words, Orban claims that she is entitled to maintain a "blind spot" ahead of her, a space the contents of which are unknown to her but into which she cannot stop her car from traveling.  The weakness of that position is clear from the results in this case but would have been more tragically presented if a pedestrian or a child on a bicycle or a motorcyclist had been stopped in front of the SUV that allegedly preceded Orban.  For this specific reason, Florida law assumes that every driver can stop her car within the space that she can see (the "imaginary clear stopping distance"), failing which she proceeds (carelessly) at her own risk and at risk to others.

Because the existence of probable cause for the citation provides a complete defense to counts two and three, which each assert a claim for malicious prosecution, Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003) (finding that the lack of probable cause is a required element of a malicious prosecution claim), Orban's motion for summary judgment (Doc. 79) is **DENIED** and the City's motion for summary judgment (Doc. 78) is **GRANTED**.  The Clerk is directed to enter judgement in favor of the City and against Orban on counts two and three.

Orban's count four asserts a claim pursuant to the Due Process Clause of the

Fourteenth Amendment.  In support of the count Orban asserts:

> As a proximate result of the aforementioned actions of the
> defendants, Dr. Orban was unreasonably detained and seized,
> seized pending hearing, and wrongfully charged and prosecuted
> for the traffic offense of careless driving.  In addition, she
> suffered violations of her constitutional rights; financial expense
> of her legal defense in traffic court; emotional distress; mental
> anguish; resulting pain, suffering and loss of the capacity for the
> enjoyment of life; an undeserved public record of a traffic charge
> against her, increased insurance premiums, legal fees and costs.

The Due Process Clause of the Fourteenth Amendment prevents a state's

"depriv[ing] any person of life, liberty, or property, without due process of law."  "[T]he

scope of the substantive due process component has been limited to areas relating to

family, procreation, marriage, and bodily integrity."  Heine v. Rice, 2001 WL 1338780 * 3

(M.D. Fla. Apr. 9, 2001) (citing Albright v. Oliver, 510 U.S. 266, 271-72 (1994)).

Procedural due process refers to the existence of adequate constitutional procedures

before any constitutional deprivation.  Heine, 2001 WL 1338780 * 3 (citing McKinney v.

Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)).

The complaint fails to specify whether Orban sues pursuant to the substantive or

the procedural component of the Due Process Clause.  Review of count four reveals no

allegation of a deprivation of substantive due process; Orban apparently asserts a claim

pursuant to the procedural due process component of the Fourteenth Amendment.

However, because the officers had probable cause to issue the citation, no

constitutional violation occurred as a result of either the citation or the initiation of the

traffic court proceeding.  Accordingly, to the extent Orban relies on the claim that she

was "unreasonably detained and seized, seized pending hearing, and wrongfully charged and prosecuted for the traffic offense of careless driving," Orban's procedural due process claim fails.  Further, Orban's general allegation that she suffered "constitutional violations" fails to satisfy the requirement that the due process claim identify a "specific constitutional deprivation."  Heine, 2001 WL 1338780 * 3 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

Accordingly, count four, pursuant to the due process component of the Fourteenth Amendment, appears to state no more than a generalized or theoretical complaint challenging a City policy.  But "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (citations omitted).  Further, a plaintiff must demonstrate "standing to sue" by establishing a "personal stake in the outcome"—"abstract injury is not enough." Lyons, 461 U.S. at 101.

To meet the constitutional requirement for invoking the jurisdiction of the federal courts, a plaintiff must show (1) an actual injury or injury-in-fact; (2) a causal relation between the alleged injury and the challenged act; and (3) a likelihood the injury will be redressed by a favorable decision.  Church, 30 F.3d at 1335.  The plaintiff must show injury or imminent danger of real and immediate, not conjectural or hypothetical, injury as the result of the challenged official conduct.  Lyons, 461 U.S. at 101-02.

Stripped of the allegations of constitutional violations resulting from the careless driving citation, Orban's complaint alleges a general claim that the City employs an

unconstitutional policy.  Accordingly, Orban's complaint satisfies neither the "case or controversy" nor the "standing to sue" requirement.  In <u>Lyons</u>, the Court stated:

> [E]ven if the complaint must be read as containing an allegation that officers are authorized to apply the chokeholds where there is no resistance or other provocation, it does not follow that Lyons has standing to seek an injunction against the application of the restraint holds in situations that he has not experienced, as for example, where the suspect resists arrest or tries to escape but does not threaten the use of deadly force. Yet that is precisely the scope of the injunction that Lyons prayed for…

461 U.S. at 106 n.7.  As stated in <u>Osediacz v. City of Cranston</u>, 414 F.3d 136, 142 (1st Cir. 2005) (Selya, J.), a case challenging the placement of certain holiday displays on public property:

> It is apodictic that a mere interest in seeing the government turn square corners is not the kind of particularized interest that can satisfy the most basic constitutional prerequisite for standing. <u>See</u> <u>Fed. Election Comm'n v. Akins</u>, 524 U.S. 11, 23-24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (collecting cases).  It has been equally clear for more than three-quarters of a century that, with certain narrow exceptions not implicated here, taxpayers, as such, lack generalized standing to challenge the constitutionality of governmental action.  <u>See</u> <u>Frothingham v. Mellon</u>, 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).  The plaintiff's standing, therefore, cannot be grounded on the mere fact that she pays taxes to a municipality which, in turn, expends funds to further an unconstitutional exercise of government power.  <u>See</u> <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church and State</u>, 454 U.S. 464, 477, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Orban's complaint fails to specify (1) a specific constitutional injury, (2) a violation by the City of Orban's due process rights, (3) a sufficient causal connection between a practice of the City and any constitutional injury to Orban, and (4) an available and effective remedy to redress any constitutional injury.  Accordingly, on or before

- 11 -

August 18, 2006, Orban must show cause why count four should not be dismissed for lack of standing, failure to allege a case or controversy, and failure to state a claim for relief.  The City may respond within ten days after service by Orban of any paper in response to this order to show cause.

ORDERED in Tampa, Florida, on July 31, 2006.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE